United States District Court
Southern District of Texas
**ENTERED**
August 08, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| JESSE MENDEZ, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:18-CV-00396 |
| § | |
| P CHANG, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND RECOMMENDATION

In this *pro se* prisoner civil rights action under 42 U.S.C. § 1983, Plaintiff Jesse Mendez asserts that his Eighth Amendment rights were violated when Defendants Dr. Philemon Chang, Dr. Isaac Kwarteng, and unidentified directors of the Hepatitis C Chronic Care Clinic refused to treat his hepatitis C with direct-acting antivirals ("DAAs"). (D.E. 1). Mendez is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division, and is currently housed at the Huntsville Unit in Huntsville, Texas, but the incident he complains of occurred at the McConnell Unit in Beeville, Texas. On December 14, 2018, Defendants moved to dismiss all claims against them. (D.E. 19). Mendez responded on June 19, 2019. (D.E. 20). For the reasons discussed further below, it is respectfully recommended that Defendants' motion to dismiss be granted.

### I. JURISDICTION

The Court has federal question jurisdiction for claims brought under § 1983 pursuant to 28 U.S.C. § 1331.

## II. BACKGROUND

### a. Complaint and Claims

Mendez alleges the following in his complaint. (D.E. 1 at 1-13). Dr. Kwarteng and Dr. Chang, both employees of the University of Texas Medical Branch at Galveston ("UTMB"), along with unidentified directors of the Hepatitis C Chronic Care Clinic Committee, were deliberately indifferent to his serious medical needs when they refused to treat his hepatitis C with DAAs. (*Id.* at 4-5). DAAs are 90 percent effective, and the Center for Disease Control has indicated that DAAs are the standard for treatment of hepatitis C. (*Id.* at 4). Chang told Mendez that he did not meet the criteria for treatment with DAAs. (*Id.* at 6). Kwarteng told Mendez that he was not sick enough for treatment and that the TDCJ could not afford to treat every person infected with hepatitis C. Kwarteng indicated that the TDCJ had a policy for hepatitis C treatment that was based on the AST to Platelet Ratio Index ("APRI"), but that Mendez's test results did not qualify him for treatment. (*Id.*). However, people with an APRI below the TDCJ's required threshold could still suffer from cirrhosis and have severe scarring and liver damage. (*Id.* at 6-7). Thus, Mendez contends that the TDCJ should not rely solely on the APRI score to determine which offenders receive treatment, nor should cost be the deciding factor. (*Id.* at 7-8).

Mendez seeks injunctive relief, compensatory damages, and punitive damages against all defendants in their individual and official capacities. (*Id.* at 4).

### b.   Grievance Records

In his step one grievance, Mendez stated that Kwarteng told him that he was not sick enough to receive treatment and that treating every offender with hepatitis C would be too costly. (*Id.* at 10-11). Tanya Lawson, the Medical Practice Manager at the McConnell Unit, responded that treatment decisions were made by the Hepatitis Committee and that Mendez's APRI score of .336 was not high enough to receive treatment at that time. (*Id.* at 11). In his step two grievance, Mendez reiterated that his body was constantly being damaged by his hepatitis C and that he should receive treatment. (*Id.* at 12-13). The TDCJ Health Services Division responded that Mendez's APRI score was not high enough to receive treatment, but that the TDCJ would continue to monitor his test results and, should his APRI rise above a score of .5, he would be prioritized for drug therapy. (*Id.* at 13).

## III.   DISCUSSION

### a.   Motion to Dismiss Standard

Rule 12(b)(1) provides for dismissal due to a lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). Where a Rule 12(b)(1) motion is filed at the same time as other Rule 12 motions, the court should consider the jurisdictional issue before addressing the merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The burden of proof for a Rule 12(b)(1) motion is on the party asserting jurisdiction. *Id.*

3

Dismissal under Rule 12(b)(1) is appropriate if a claim is barred by Eleventh Amendment immunity. *See Warnock v. Pecos Cty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996).

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In determining whether to grant a motion to dismiss, the court must not go outside the pleadings and must accept all well-pleaded facts as true, looking at them in the light most favorable to the plaintiff. *Scanlan v. Texas A&M University*, 343 F.3d 533, 536 (5th Cir. 2003).

A pleading must include a short and plain statement of the claim showing that the pleader is entitled to relief and giving the defendant fair notice of what the claim is. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, but the plaintiff must nonetheless provide more than merely labels and conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The factual allegations in the complaint are assumed to be true, even if unlikely, but the allegations must "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Id.* at 555, 570. A claim has facial plausibility where the factual allegations allow the court to reasonably infer that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facts that are merely consistent with a defendant's liability are insufficient. *Id.*

*Pro se* complaints are held to a less stringent standard than pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt

that the plaintiff can prove no set of facts that would entitle him to relief. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

### b. Eleventh Amendment

In their motion to dismiss, Defendants first argue that Mendez's claims against them for damages in their official capacity should be dismissed under Rule 12(b)(1) as barred by the Eleventh Amendment. (D.E. 19 at 2).

Mendez does not address this issue in his response. (*See generally* D.E. 20).

The Eleventh Amendment bars claims for damages against a state in federal court. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). It also bars claims for damages against state officials being sued in their official capacity. *Id.* Here, to the extent that Mendez seeks damages against any of the defendants in their official capacity, those claims are barred by the Eleventh Amendment and should be dismissed.

### c. Deliberate Indifference

Defendants next argue that Mendez's deliberate indifference claims should be dismissed under Rule 12(b)(6) because Mendez's claim that the TDCJ refused to treat him with DAAs is not actionable under § 1983. (D.E. 19 at 4-5). They argue that Mendez's complaint indicates that the TDCJ is monitoring his condition and that he is receiving treatment in accordance with the TDCJ's treatment policy. (*Id.* at 5). Thus, Defendants argue that Mendez's claim is merely a disagreement with his treatment plan, which does not state a claim for deliberate indifference to a serious medical need. (*Id.*).

Mendez responds that the Defendants are treating some offenders with hepatitis C, but are not treating others who are not sick enough. (D.E. 20 at 2). He states that he is

5

suffering from mental anguish and emotional distress because he has a deadly disease that the Defendants are refusing to treat. (*Id.* at 2-3).

The government is obligated to provide medical care to those in prison. *Estelle*, 429 U.S. at 103. Deliberate indifference to an inmate's serious medical need violates the Eighth Amendment prohibition of cruel and unusual punishment. *Id.* at 104. "Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). An incorrect diagnosis by prison medical personnel is insufficient to state a claim of deliberate indifference. *Id.* Instead, prison officials must refuse to treat the inmate, ignore his complaints, intentionally treat him incorrectly, or otherwise engage in conduct that demonstrates a wanton disregard for a serious medical need. *Id.* The decision whether to provide additional treatment is a matter of medical judgment. *Id.* The failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to support a claim of deliberate indifference. *Id.* The deliberate indifference standard requires a showing that an official was subjectively aware of the risk of serious harm to the inmate. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

It is not deliberate indifference for a state to refuse to provide a specific treatment for hepatitis C where medical personnel are regularly monitoring the condition. *Roy v. Lawson*, 739 F. App'x 266, 266-67 (5th Cir. 2018) (unpublished). This is true even where cost is the state's reason for refusing to provide optimal drug treatment before an offender reaches a particular medical threshold. *Id.* at 267. Such a claim is ultimately a

challenge to the medical judgment exercised by prison medical staff, which is insufficient to state a constitutional claim. *Id.*

Here, Mendez's allegations, taken as true, fail to state a claim for deliberate indifference to a serious medical need. Mendez merely alleges that the Defendants have refused to treat him with DAAs because tests show that his APRI is not yet high enough to require such treatment. (D.E. 1 at 4-7). Thus, Mendez's claims are analogous to the claim that the Fifth Circuit rejected in *Roy* because the medical personnel are monitoring his condition and, rather than refusing treatment outright, have set specific medical preconditions to receive the treatment Mendez seeks. *Roy*, 739 F. App'x at 266-67. As in *Roy*, Mendez's claim is ultimately a challenge to the medical judgment exercised by Defendants—namely, that the reliance on APRI as the primary treatment criteria is misplaced—and is insufficient to state a constitutional claim. *Id.* at 267. Although *Roy* is unpublished and nonprecedential, this conclusion also aligns with the general law on deliberate indifference claims. *See Domino*, 239 F.3d at 756. Thus, Mendez has failed to state a claim of deliberate indifference and his complaint should be dismissed.

    d.   **Qualified Immunity**

Finally, Defendants argue that they are entitled to qualified immunity because Mendez's allegations do not demonstrate that they violated a clearly established constitutional right. (D.E. 19 at 7). They argue that Mendez has also not established any objectively unreasonable actions by any defendant because they acted in accordance with TDCJ policy and general medical guidelines. (*Id.* at 8-9).

7

Mendez does not address this issue in his response. (*See generally* D.E. 20).

Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is clearly established if every reasonable official would have understood that his actions violated that right. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The qualified immunity determination requires a two-step analysis, including: (1) whether the plaintiff has stated a violation of constitutional rights; and (2) the objective reasonableness of the official's conduct. *Salas v. Carpenter*, 980 F.2d 299, 305-06 (5th Cir. 1992).

Here, dismissal of Mendez's complaint is also appropriate because Defendants are entitled to qualified immunity. As discussed above, Mendez's deliberate indifference claim does not state a violation of his constitutional rights. *See Salas*, 980 F.2d at 305-06. Thus, his claim fails at the first step of the qualified-immunity analysis, and it is unnecessary to determine whether Defendants' actions were objectively reasonable.

## IV. RECOMMENDATION

Accordingly, it is respectfully recommended that Defendants' motion to dismiss (D.E. 19) be GRANTED and Mendez's complaint (D.E. 1) be DISMISSED for lack of jurisdiction in part and for failure to state a claim in part.

Respectfully submitted this 8th day of August, 2019.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).