UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JESSE MENDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 2:18-cv-396 |
| | § | |
| P CHANG, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jesse Mendez is a Texas inmate appearing *pro se* and *in forma pauperis*. In this prisoner civil rights action, Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Pending before the Court is: (1) a Motion for Summary Judgment filed by Plaintiff (D.E. 48); and (2) a Motion for Summary Judgment filed by Defendants Philemon Chang, Allen Hightower, Isaac Kwarteng, Tanya Lawson, Lannette Linthicum, Bryan Collier, Owen Murray, and Monica Pickthall. (D.E. 59). For the reasons stated herein, it is respectfully recommended that the Court **GRANT** Defendants' summary judgment motion and **DENY** Plaintiff's summary judgment motion.

## I.    JURISDICTION

The Court has federal question jurisdiction over this civil action pursuant to 28 U.S.C. § 1331. This case was referred to the undersigned United States Magistrate Judge

for case management and to furnish a recommendation pursuant to 28 U.S.C. § 636.

## II.    PROCEDURAL BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently housed at the Huntsville Unit in Huntsville, Texas.   Plaintiff's claims arise in connection with his previous housing assignments at the McConnell and Garza Units in Beeville, Texas.

In his amended complaint, Plaintiff sues the following Defendants in both their individual and official capacities: (1) Dr. Philemon Chang, the Medical Director of the Garza Unit; (2) Dr. Isaac Kwarteng, the Medical Director of the McConnell Unit; (3) Tanya Lawson, the McConnell Unit's Medical Practice Manager; (4) Dr. Monica Pickthall, member of the University of Texas Medical Branch (UTMB) Hepatitis C Chronic Care Committee; (5) Dr. Lannette Linthicum, TDCJ Health Services Director; (6) Allen Hightower, Supervisor of the Correctional Managed Healthcare (CMH) for TDCJ; (7) Dr. Owen Murray, President of UTMB at John Sealy Hospital; and (8) Brad Livingston, former TDCJ Executive Director.  (D.E. 39).   Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs when they refused to treat his Hepatitis C condition with direct-acting antivirals (DAAs).   (*Id.* at 6).   Plaintiff seeks injunctive relief, compensatory damages, and punitive damages against all defendants.  (*Id.*).

Defendants have filed their answers.  (D.E. 42, 53).  Defendants indicate that Bryan Collier has been the acting TDCJ Executive Director since 2016 and should, therefore, be substituted in place of Defendant Livingston. (D.E. 42, p. 1).  In a separate order, the undersigned will direct the Clerk of this Court to make this substitution.

Plaintiff and Defendants have filed Cross Motions for Summary Judgment.  (D.E. 48, 59).  On October 1, 2020, Defendants filed their response to Plaintiff's summary judgment motion.  (D.E. 61).  Plaintiff subsequently filed his response to Defendants' summary judgment motion.  (D.E. 62). On March 31, 2021, Defendants filed an Advisory Concerning Supplemental Authority, to which Plaintiff objected.  (D.E. 65, 66).

On March 30, 2021, the undersigned conducted a telephone conference to inform Plaintiff of the status of a class action case filed in this Court.  (*Roppolo, et al. v. Linthicum, et al.*, 2:19-CV-262 (S.D. Tex. filed on Sept. 11, 2019) (*Roppolo* Class Action).  Due to technical difficulties, Plaintiff was unable to make an appearance at the telephone conference.

In *Roppolo,* a group of Texas inmates sought injunctive relief in the form of being treated with DAAs for their Hep. C infection.  The parties entered into a proposed Settlement Agreement setting forth a treatment schedule in which the sickest inmates would receive DAA treatment first depending upon the inmate's particular AST/Platelet Ration Index (APRI) score and Metavir score.  (*Roppolo* Class Action, D.E. 132-2 ).  These scores are useful in determining the degree of fibrosis or cirrhosis in the liver.  (*Id.*, D.E. 132, p. 12).

Plaintiff is a Settlement Class Member in the *Roppolo* Class Action.  On May 11, 2021, District Judge Nelva Gonzales Ramos overruled all objections to the proposed Settlement Agreement and directed the parties to submit an agreed final order and judgment. Notwithstanding approval of the Settlement Agreement by the Court, TDCJ

inmates with Hep. C infections, such as Plaintiff, are not barred from filing a separate lawsuit seeking monetary relief related to the treatment received.  (D.E. 138-1, p. 2).

## III.   SUMMARY JUDGMENT EVIDENCE

Defendants offer the following summary judgment evidence:

Exh. A:     Plaintiff's Relevant Medical Records from January 1, 2013 to November 8, 2018 (D.E. 59-1).

Exh. B:     Plaintiff's Relevant Medical Records from November 1, 2018 to July 23, 2020 (D.E. 59-2).

Exh. C:     Affidavit of Dr. Jessica S. Khan and attached exhibits (D.E. 59-3 through 59-8).

Exh. D:     CMH Policy (Hep. C Policy) B-14.13.3 from 2013-2018 (Hep. C Policy) (D.E. 59-9).

Exh. E:     Hep. C Policy B-14.13.3 effective April 2019 (D.E. 59-10).

Plaintiff, in turn, has offered the following summary judgment evidence:

● Plaintiff's verified amended complaint (D.E. 39).

● Plaintiff's affidavits (D.E. 39-1, 48-1, 66-1, p. 3).

● Plaintiff's relevant medical evidence (D.E. 66-1, pp. 1-2, 4-5).

The parties have presented the following undisputed summary judgment evidence: The TDCJ's Hepatitis C Policy is set forth in the CMHC Infection Control Manual as Policy B-14.13-3.  (D.E. 59-9, pp. 49-57; D.E. 59-10).  The Hepatitis C Policy provides "guidance regarding the modes of transmission, screening, prevention, initial evaluation, clinical management, evaluation during treatment, housing, and work assignments of offenders with Hepatitis C (HCV)."  (D.E. 59-9, p. 49).  Dr. Jessica Khan, the UTMB/CMC's Director for Clinical Virology, attested in her affidavit that

"[r]ecommendations for the treatment of HCV are promulgated by the American Association for the Study of Liver Diseases (AASLD) and the Infectious Disease Society of America (IDSA)."  (D.E. 59-3, p. 11).  According to Dr. Kahn, the Hepatitis C Policy is in "accord with AASLD and IDSA recommendations when treatment prioritization of patients is mandated due to increased numbers of candidates for treatment and/or limited resources."  (D.E. 59-3, p. 11).

The Hepatitis C Policy generally provides that "the screening, testing, baseline evaluation, and annual evaluations in chronic care clinic are performed by unit level medical providers" and that the unit provider is authorized to determine whether a patient is a candidate for referral to the UTMB/CMC HCV Clinic for prioritization, monitoring, and treatment."  (D.E. 59-3, p. 9).  According to Dr. Khan, the monitoring guidelines set forth in the Hepatitis C Policy "prioritize treatment of patients whose liver status reflects fibrosis or cirrhosis ahead of those [patients] with little to no structural or functional evidence of liver impairment."  (D.E. 59-3, p. 10).

Dr. Khan stated in her affidavit that the UTMB/CMC HCB Clinic utilizes a patient's APRI score as a primary screening tool to prioritize patients for referral and treatment.  (D.E. 59-3, p. 10).  "APRI … is a non-invasive calculation used to determine the likelihood of fibrosis and/or cirrhosis in patients with Hepatitis C."  (D.E. 59-3, p. 5).  Other methods as clinically indicated, such as Fibrous Routine Test (FRT), Fibrosis-4 (FIB-4), Model-for-End-Stage Liver Disease (MELD), and /or a liver biopsy, are also utilized to prioritize treatment.  (D.E. 59-3, p. 10).  Dr. Kahn further states:

The process by which patients are prioritized for direct-acting antiviral treatment (DAA) is primarily based upon the severity of their liver status. However, other patients that are prioritized for early DAA therapy (Tier 1 candidates) include patients who 1) enter TDCJ on treatment for HCV, 2) have cirrhosis, severe fibrosis or a history of treated hepatocellular carcinoma, 3) are co-infected with HIV or Hepatitis B, 4) have extra-hepatic manifestations (e.g. vasculitis, cryoglobulinemia or other HCV induced disease), 5) have had a liver transplant, or 6) have a serious comorbid condition whose treatment would exacerbate HCV disease progression.

(D.E. 59-3, p. 11).

The Hepatitis C Policy, effective April 14, 2016, provided that inmates with Hep. C infection must be enrolled in the Chronic Care Clinic and seen at least once every 12 months. (D.E. 59-9, p. 51). Under the Hepatitis C Policy, effective April 14, 2016, patients with APRI scores less than or equal to 0.7 generally did not require evaluation for possible treatment. (D.E. 59-9, p. 52). Referrals and evaluation for treatment were nevertheless possible based on certain clinical considerations, including: (1) the Hep. C infection was acquired many years previously; (2) clinical or laboratory evidence of a failing liver; and (3) co-morbid conditions that might result in an unreliable APRI score. (D.E. 59-9, p. 9). Dr. Khan stated in her affidavit that the Hepatitis C Policy was revised "in 2016 to incorporate the use of … DAAs Sovaldi (sofosbuvir] and Harvoni (combination sofosbuvir and ledipasvir)." (D.E. 59-3, p. 7).

The Hepatitis C Policy was revised on April 3, 2017. (D.E. 59-9, pp. 61-69). The policy, as revised, again required inmates with Hep. C infection to be enrolled in the Chronic Care Clinic and seen at least once every 12 months. (D.E. 59-9, p. 63). The policy maintained the general requirement that patients with APRI scores less than or equal to 0.7, absent considerations discussed above, did not require evaluation for possible

treatment.  (D.E. 59-9, p. 64).

The Hepatitis C Policy was revised in May 2018 and April 2019.  (D.E. 59-9, pp. 73-81; D.E. 59-10).  The policy, as revised on these two occasions, again required inmates with Hep. C infection to be enrolled in the Chronic Care Clinic and seen at least once every 12 months.  (D.E. 59-9, p. 75; D.E. 59, 10, p. 4).   The policy set forth the general requirement that patients with APRI scores less than or equal to 0.5, absent considerations discussed above, did not require evaluation for possible treatment.  (D.E. 59-9, p. 76; D.E. 59-10, p. 5). The Hepatitis C Policy, effective May 2018 and April 2019, provided that offenders with an APRI score over 0.5 should be referred to a designated HCV clinic for possible treatment but that the decision must be individualized.  (D.E. 59-9, p. 77; D.E. 59-10, p. 6).  The medical provider retains discretion in his clinical judgment whether a patient with an APRI lower than 0.5 should be referred for possible treatment.

Plaintiff was diagnosed with Hep. C in 1995.  (D.E. 59-1, p. 49).  Plaintiff's Hep. C condition has been monitored by McConnell Unit and UTMB medical officials on numerous occasions during his current and previous stays in TDCJ custody from 2013 through 2020. (D.E. 59-3, pp. 3-4; D.E. 59-1, pp. 13-71, 205, 273, 307, 321-329, 368, 396-397, 419, 425-428, 444, 452-457, 490, 509-510, 522, 547; (D.E. 59-2, pp. 64, 82, 110, 114, 128, 131, 135-138, 141, 160, 165, 169-170, 177, 186-188, 193, 339).  Plaintiff has been seen at least on an annual basis in the Chronic Care Clinic for his Hep. C condition during his time in TDCJ custody.  (D.E. 59-3, p. 4).

When Plaintiff was tested at various times from 2016 through 2020, his APRI score was as follows: (1) February 19, 2016 - APRI = 0.377 (D.E. 59-1, p. 368); (2) May 23,

2016 - APRI = 0.345 (D.E. 59-1, p. 452); (3) May 23, 2017 - APRI = 0.329 (D.E. 59-1, p. 425); (4) June 3, 2019 - APRI = 0.4 (D.E. 59-1, p. 110); (5) June 28, 2019 - APRI = 0.547 (D.E. 59-2, p. 64); (6) March 24, 2020 - APRI = 0.4 (D.E. 59-2, p. 138); and (7) April 9, 2020 - APRI = 0.372 (D.E. 59-2, p. 169).

On February 12, 2018, while confined at the Garza Unit, Plaintiff submitted a sick call request complaining of congestion and difficulty breathing. (D.E. 59-3, p. 4). Dr. Chang saw Plaintiff two days later and treated him for conditions related to his sinuses and feet. (D.E. 59-3, p. 4; D.E. 59-7, pp. 37-38). Dr. Chang again saw Plaintiff on February 21, 2018 regarding Plaintiff's complaints about foot pain. Dr. Chang ordered x-rays for Plaintiff and changed his pain medications. (D.E. 59-4, p. 4; D.E. 59-7, pp. 41-43). Dr. Chang saw Plaintiff for a third time on March 8, 2018, regarding Plaintiff's continued complaints of foot pain. (D.E. 59-4, p. 5; D.E. 59-8, pp. 5-7). Medical records do not reflect that Dr. Chang ever discussed Plaintiff's Hep. C condition or Hep. C treatment or referral protocols. (D.E. 59-3, p. 5).

Dr. Kwarteng saw Plaintiff on May 15, 2018. (D.E. 59-3, p. 5). At the time of this consultation, Plaintiff's APRI score was 0.336 and his laboratory results were within normal limits except for a mild elevation of one of Plaintiff's liver enzymes. (D.E. 59-3, p. 5). Dr. Kwarteng explained to Plaintiff at that time why he did not meet the requirements for referral and treatment for his Hep. C condition. (D.E, 59-3, p. 5).

On December 3, 2018, Plaintiff was seen at the HCV Clinic where it was noted that his most recent laboratory results were unremarkable. (D.E. 59-3, p. 7; D.E. 59-8, p. 20). The HCV Clinic provider ordered repeat laboratory work to confirm that Plaintiff's liver

function remained stable.  (D.E. 59-3, p. 7; D.E. 59-8, p. 21).

Upon review of Plaintiff's medical records through January 14 2019, Dr. Kahn remarked that Plaintiff "has remained asymptomatic without evidence of liver dysfunction or extra-hepatic signs or symptoms of Hepatitis C."  (D.E. 59-3, p. 4).  She further stated that, through January 14, 2019, Plaintiff's "medical evaluations, laboratory studies, and non-evasive measures of liver function (e.g. APRI scores) are without evidence of fibrosis, cirrhosis or other sequelae of Hepatitis C."  (D.E. 59-3, p. 10).  Other than having mild liver inflammation, as evidenced by slightly elevated ALT liver enzyme and APRI scores, Dr. Kahn has found "no signs or symptoms of significant disease progression or 'complications' related to his HCV infection."  (D.E. 59-3, p. 9).

Clinical notes dated February 28, 2020 reveal that an ultrasound image was taken of Plaintiff's liver on February 18, 2020.  (D.E. 59-2, p. 38; D.E. 66-1, p. 1).  The image revealed Plaintiff's liver to be "[n]ormal in size with coarse echotexture" and "no focal hepatic lesion."  According to the clinical notes, "[c]oarsened hepatic echotexture is consistent with chronic liver disease."  (D.E. 59-2, p. 38; D.E. 66-1, p. 1).  Starting on April 6, 2020 and ending on June 29, 2020, Plaintiff received a DAA medication called Sofosbuvir for his Hep. C condition.  (D.E. 59-2, p. 120-123).  After receiving the DAA course of treatment, Plaintiff was tested and found to be Hepatitis C negative.  (D.E. 59-2, pp. 82, 125).  Clinical notes dated June 11, 2020 reveal that Plaintiff was counseled on risk-avoidance to prevent reinfection with Hep. C.  (D.E. 59-2, p. 126).

## IV.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and

the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.

In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence or evaluate the credibility of witnesses.  *Id.*  Furthermore, affidavits or declarations "must be made on personal knowledge, [shall] set out facts that would be admissible in evidence, and [shall] show that the affiant or declarant is competent to testify to the matters stated." Fed. R. Civ. P. 56(c)(4); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).  Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the

burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). When a government official has pled the defense of qualified immunity, the burden is on the plaintiff to establish that the official's conduct violated clearly established law. *Id.* Plaintiff cannot rest on his pleadings; instead, he must show a genuine issue of material fact concerning the reasonableness of the official's conduct. *Bazan v. Hidalgo County*, 46 F.3d 481, 490 (5th Cir. 2001).

## V.    DISCUSSION

### A.    Mootness

Article III of the Constitution limits the jurisdiction of federal courts to actual cases and controversies. U.S. Const., Art. III, § 2. This article requires parties seeking to invoke federal court jurisdiction to demonstrate they have a legally cognizable interest or personal stake in the outcome of a case. *Genesis Healthcare v. Symczyk*, 569 U.S. 66, 71 (2013); *Payne v. Progressive Financial Services, Inc.*, 748 F.3d 605, 607 (5th Cir. 2014). A live

controversy must exist at every stage of the litigation. *Genesis*, 569 U.S. at 71.

A claim becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). In other words, if a controversy between parties resolves to the point that they no longer qualify as "'adverse parties with sufficient legal interests to maintain the litigation,'" a court is without power to entertain the particular claim. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 324 (5th Cir. 2009) (quoting *United States v. Lares-Meraz*, 452 F.3d 352, 351 (5th Cir. 2006) (per curiam)). Courts, therefore, lack "constitutional jurisdiction" to resolve an issue where there is no Article III controversy. *See Goldin v. Bartholow*, 166 F.3d 710, 717 (5th Cir. 1999).

Defendants contend that Plaintiff's claims seeking injunctive relief are now moot because he has received his requested injunctive relief in the form of the DAA drug Sobosbuvir and has completed the treatment resulting in Plaintiff being tested Hep. C negative. (D.E. 59, p. 8). Plaintiff has not responded to this argument.

The uncontroverted competent summary judgment evidence reflects that: (1) Plaintiff received a course of DAA treatment starting on April 6, 2020 and ending on June 29, 2020; and (2) after receiving the DAA drug Sobosbuvir, Plaintiff was tested and found to be Hepatitis C negative. (D.E. 59-2, pp. 82, 125). Because it is evident that Plaintiff has received the injunctive relief sought in his original complaint which successfully addressed his Hep. C infection, his claims against Defendants for injunctive relief have been rendered moot. *See Hinton v. Amonette*, No. 3:18-CV-59, 2021 WL 279238, at *6 (E.D. Va. Jan. 27, 2021) (explaining prisoner's constitutional claims that the state prison

system's policies had delayed him access to DAA treatment were rendered moot after Plaintiff received the DAA treatment and was cured of the Hep. C infection).   Accordingly, the undersigned respectfully recommends that Defendants be entitled to summary judgment on Plaintiff's claims for injunctive relief as being rendered moot.[1]

### B.  Deliberate Indifference

Plaintiff claims that Defendants have acted with deliberate indifference to his serious medical needs.  Prisoners are protected from cruel and unusual punishment by the Eighth Amendment.  While not mandating a certain level of medical care for prisoners, the Eighth Amendment imposes a duty on prison officials to ensure that inmates receive adequate medical care.  *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

Prison officials are liable for failure to provide medical treatment if they are deliberately indifferent to a prisoner's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976).  Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment.  *Id.* at 104-05.  A prison official acts with deliberate indifference if she knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  *Farmer*, 511 U.S. 825, 847 (1994).  The official must both be aware of facts from which an inference of substantial risk of serious

---

[1] Because Plaintiff received his DAA treatment in 2020, it is not necessary to consider whether his claims for injunctive relief were also foreclosed by the terms of the proposed Settlement Agreement presented in *Roppolo* and his status as a Settlement Class Member in that action.

harm can be drawn and also draw the inference. *Easter*, 467 F.3d at 463. A prison official's knowledge of substantial risk may be inferred if the risk was obvious. *Id.*

"Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). Delay in treatment may be actionable under § 1983 only if there has been deliberate indifference and the delay results in substantial harm. *Stewart v. Murphy,* 174 F.3d 530, 537 (5th Cir.1999); *Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993).

Although inadequate medical treatment may rise to the level of a constitutional violation, "unsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citations omitted).

Plaintiff contends in his summary judgment motion that he was denied proper treatment for his Hep. C condition, in violation of his Eighth Amendment rights. (D.E. 48, p. 10). Plaintiff argues that his Hep. C condition is a serious medical need requiring immediate treatment with DAAs upon diagnosis as the infection can lead to pain, liver

scarring, cirrhosis, and liver cancer.  (D.E. 48, pp. 11-13).

Defendants contend in their summary judgment motion that Plaintiff has failed to demonstrate that they acted with deliberate indifference to Plaintiff's serious medical needs.  (D.E. 59, pp. 14-16).  They argue that Plaintiff's claims amount to a disagreement with his treatment plan and that any claims of deliberate indifference are not supported by the evidence.  (D.E. 59, p. 16).  Defendants further argue that Plaintiff's deliberate indifference claims should be dismissed due to their lack of personal involvement and because Plaintiff has failed to establish a physical injury.  (D.E. 59, pp. 9-11).

Defendants further contend that Plaintiff's summary judgment motion is unsupported by competent summary judgment evidence and that Plaintiff has failed to establish the absence of a genuine issue of material fact as to each element of his deliberate indifference claim.  (D.E. 61, pp. 3-6).  In response to Defendants' summary judgment motion, Plaintiff maintains that his serious medical needs were disregarded by failing to immediately treat him with DAAs.  (D.E. 62, p. 3).

Defendants have offered extensive evidence that they did not wantonly disregard Plaintiff's Hep. C condition so as to violate the Eighth Amendment. Plaintiff's medical records show that Defendants regularly tested for and monitored Plaintiff's Hep. C condition at all times during his TDCJ incarceration.  (D.E. 59-3, pp. 3-4; D.E. 59-1, pp. 13-71, 205, 273, 307, 321-329, 368, 396-397, 419, 425-428, 444, 452-457, 490, 509-510, 522, 547; (D.E. 59-2, pp. 64, 82, 110, 114, 128, 131, 135-138, 141, 160, 165, 169-170, 177, 186-188, 193, 339).

The uncontroverted summary judgment evidence further shows that medical

officials adhered to the Hepatitis C Policy in effect by: (1) evaluating and monitoring Plaintiff's Hep. C condition on at least an annual basis in the Chronic Care Clinic during his time in TDCJ custody (D.E. 59-3, p. 4); and (2) performing laboratory work, as well as testing Plaintiff's APRI score on a number of occasions, to determine the condition of Plaintiff's liver and consider whether Plaintiff's Hep. C condition warranted further treatment such as the use of DAAs (D.E. 59-3, pp. 3-4, 7, 9-10).  The objective medical records specifically demonstrate that, from 2016 through 2020, Plaintiff's APRI score ranged from 0.329 to 0.547.  (D.E. 59-1, pp. 110, 368, 425, 452; D.E. 59-2, pp. 64, 138, 169.  Upon her independent review of Plaintiff's medical records through January 14, 2019, Dr. Kahn found no signs or symptoms of significant liver issues or progression of liver disease related to his Hep. C infection based on Plaintiff's APRI scores or other laboratory work.  (D.E. 59-3, pp. 9-10).

Plaintiff vigorously argues that he should have been treated with DAAs as soon as he contracted the Hep. C infection and that each day without the appropriate treatment increases the likelihood that he would develop cirrhosis, fibrosis, and then liver cancer. (D.E. 48, pp. 12-13).  Plaintiff cites a clinical note, dated February 28, 2020, in which an ultrasound image revealed Plaintiff to have a coarsened hepatic echotexture consistent with chronic liver disease.  (D.E. 59-2, p. 38; D.E. 66-1, p. 1).

The February 28, 2020 clinical note, however, did not indicate whether Plaintiff's liver condition had significantly worsened over time or whether Plaintiff required immediate treatment for his liver.  Indeed, the note further revealed Plaintiff's liver to be normal in size with "no focal hepatic lesion."  (D.E. 59-2, p. 38; D.E. 66-1, p. 1).  Even

assuming Plaintiff's February 2020 ultrasound was evidence of Plaintiff's liver condition deteriorating due to his Hep. C infection, the competent summary judgment evidence reveals that Plaintiff started receiving a course of treatment less than two months later in the form of the DAA Sofosbuvir.  (D.E. 59-2, p. 120-123).   After receiving the DAA course of treatment, Plaintiff was tested and found to be Hep. C negative.  (D.E. 59-2, pp. 82, 125).

To the extent he claims that Defendants acted with deliberate indifference through the medical treatment provided or their role in setting forth the Hepatitis C Policy, the objective medical evidence presented rebuts any claim that his Hep. C complaints were intentionally ignored, that Defendants refused to provide him with care, or that Defendants intentionally or wantonly delayed medical care for his Hep. C  condition.  *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnosis, and medications may rebut an inmate's allegations of deliberate indifference"); *Turner v. Moffett*, No. 3:12-CV-220, 2013 WL 5214070, at *3 (S.D. Tex. Sep. 17, 2013) (recognizing that the court may find allegations to be implausible when contradicted by the objective medical evidence); *Alexander v. Dickerson*, No. 6:08cv404, 2009 WL 2244139, at *9 (E.D. Tex. Jul. 27, 2009) (concluding that conclusory allegations or unsubstantiated assertions cannot defeat a summary judgment motion).

Plaintiff's complaints about his medical care amount to little more than a disagreement over what constitutes adequate testing and treatment for his condition. *See Whiting v. Kelly*, 255 F. App'x 896, 899 (5th Cir. 2007) ("Although [plaintiffs] clearly believe that they should undergo additional testing and drug therapies, such disagreement

does not give rise to a constitutional claim.") (citations omitted).  Similar claims challenging the individualized medical judgment exercised by prison medical staff in determining the appropriate course of Hep. C treatment fail to give rise to a constitutional violation."  *Roy v. Lawson*, 739 F. App'x 266, 267 (5th Cir. 2018).  *See also Hendrix v. Aschberger*, 689 F. App'x 250, 250 (5th Cir. 2017) (per curiam) (holding that failure to provide requested Hep. C medication did not state a claim of deliberate indifference); *Davidson v. Tex. Dep't of Criminal Justice, Inst. Div.*, 91 F. App'x 963, 965 (5th Cir. 2004) (finding that denial of interferon therapy for Hepatitis C was done in compliance with generally accepted medical standards and did not constitute deliberate indifference); *Vasquez v. Morgan*, No. H-18-3978, 2019 WL 2393428, at *3 (S.D. Tex. June 6, 2019) (holding that the decision not to prescribe the DAA Epclusa was a matter for medical judgment and therefore not actionable under the Eighth Amendment).

Plaintiff has not offered competent evidence that Defendants were deliberately indifferent to his serious Hep. C infection and, therefore, does not present a genuine issue of material fact as to his Eighth Amendment claims.  Accordingly, even when viewing the evidence in a light most favorable to Plaintiff, he fails to establish that relief is available under § 1983.  The undersigned respectfully recommends that Defendants should be entitled to summary judgment in their favor as to Plaintiff's Eighth Amendment claims.

## C.    Qualified Immunity

Defendants contend that they are entitled to qualified immunity which shields them from constitutional liability in their individual capacities.  (D.E. 59, pp. 12-17).  The doctrine of qualified immunity affords protection against individual liability for civil

damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant invokes the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). "To discharge this burden, the plaintiff must satisfy a two-prong test. *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). First, he must claim that the defendant committed a constitutional violation under current law. *Id.* Second, he must claim that the defendant's action was objectively reasonable in light of the law that was clearly established at the time of the complained-of actions. *Id.*

It is often but not always appropriate to conduct the qualified immunity analysis by first determining whether a constitutional violation has occurred. *See Pearson*, 555 U.S. at 236. In this case, because Plaintiff has failed to establish his Eighth Amendment claims against Defendants, it is not necessary to examine whether Defendants' actions were objectively reasonable. Accordingly, the undersigned respectfully recommends that Defendants are entitled to qualified immunity with respect to Plaintiff's Eighth Amendment claims asserted against them in their individual capacities.

## VI.    RECOMMENDATION

Defendants have demonstrated that no genuine issue of a material fact exists as to whether they were deliberately indifferent to Plaintiff's serious medical needs, their

entitlement to qualified immunity, and whether Plaintiff's claims for injunctive relief are barred as moot.   Thus, it is respectfully recommended that Defendants' Motion for Summary Judgment (D.E. 59) be **GRANTED**, that Plaintiff's deliberate indifference claims against them be **DISMISSED with prejudice**, and that Plaintiff's Motion for Summary Judgment (D.E. 48) be **DENIED**.

Respectfully submitted on June 10, 2021.

Julie K. Hampton
United States Magistrate Judge

Respectfully submitted this .

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United* Servs. *Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).